

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

REPUBLIC TOBACCO, L.P.,  )
                         )
        Plaintiff,       )
                         )
    v.                   )  No. 06 C 2738
                         )
                         )
NORTH ATLANTIC TRADING   )
COMPANY, INC., et al.,   )
                         )
        Defendants.      )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant North Atlantic Trading Company, Inc.'s, North Atlantic Operating Company, Inc.'s, and National Tobacco Company, L.P.'s (collectively referred to as "North Atlantic") partial motion to dismiss counts III and V. For the reasons stated below, we deny the partial motion to dismiss in its entirety.

## BACKGROUND

Plaintiff Republic Tobacco, L.P. ("Republic") alleges that North Atlantic and Republic both import and sell roll-your-own tobacco papers and products. Both

North Atlantic and Republic allegedly market their products through distributors and wholesalers that sell the products to retail stores. North Atlantic allegedly imports and distributes its papers under the ZIG-ZAG brand name and Republic allegedly imports and distributes its products under brand names such as the TOP and JOB.

According to Republic, North Atlantic prepared and circulated to its buyers a "false and misleading presentation deck titled 'Cigarette Paper Review.'" (Compl. Par. 9). In the "Cigarette Paper Review" ("Review"), North Atlantic allegedly criticized Republic for marketing "Look Alike Products" that Republic asserts are similar to the ZIG-ZAG brand. (Compl. Par. 9). North Atlantic also criticized Republic in the Review for falsely saying "[Republic's product] is the same paper" as the ZIG-ZAG brand paper. (Compl. Par. 9). In the Review, North Atlantic also allegedly portrayed Republic's Chairman as a liar. Republic contends that the Review constitutes false advertising that was used by North Atlantic to undermine Republic's relationships with its customers and the perceived integrity of Republic's products. Republic alleges that North Atlantic's alleged misconduct has adversely impacted Republic's sales and damaged its business relationships and reputation in the cigarette paper industry.

Republic brought the instant action and included in the complaint a false advertising claim alleging a violation of 15 U.S.C. § 1125(a) of the Lanham Act, 15

U.S.C. § 1051 *et seq.* (Count I), a claim alleging a violation of 815 ILCS 510/2 of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1 *et seq.* (Count II), a claim alleging a violation of 815 ILCS 505/2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Fraud Act"), 815 ILCS 505/1 *et seq.* (Count III), a defamation claim (Count IV), and an unfair competition claim (Count V). North Atlantic now moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), (R. Mem. 1), to dismiss the Fraud Act claim (Count III) and the unfair competition claim (Count V).

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also*

*Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail. . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action . . . .'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Kyle*, 144 F.3d at 455, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a

'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

## DISCUSSION

### I. Fraud Act Claim (Count III)

North Atlantic argues that Republic has not properly pled a Fraud Act claim because Republic has not alleged that it is a consumer of North Atlantic's products. The Fraud Act is intended to protect consumers. *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004). A plaintiff bringing a Fraud Act claim must be a consumer as defined in the Fraud Act or the claim must involve a fraud "of sufficient magnitude to be likely to affect the market generally, . . . and thus be likely to harm consumers in the colloquial sense of the ultimate buyers of the finished product . . . ." *Id.* (stating that a fraud which causes damages to be "passed on to consumers in the form of higher prices" would suffice).

In the instant action, North Atlantic argues that Republic has failed to plead all of the elements for a Fraud Act claim because Republic does not allege that it is deemed a consumer under the Fraud Act. North Atlantic also contends that the fraud alleged in the complaint is not of sufficient importance to the cigarette paper market

5

to affect the market's consumers. At this stage of the proceedings, however, there are not sufficient allegations in the complaint to establish the impact that the alleged fraud in this action could have on the consumers of cigarette papers. In order to make such a determination, the court would need to look beyond the allegations in the complaint, which would be premature at this juncture. *See May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000)(stating that the evidence can be assessed at the summary judgment stage, but that "[a]t the motion to dismiss stage, it is premature to make such factual assessments"). Republic correctly points out that under the notice pleading standard, it does not have to allege facts to meet all the elements of its claims and does not need to address in its complaint all of the concerns and defenses that North Atlantic may chooses to raise. *See Sanjuan*, 40 F.3d at 251 (stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"); *United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004)(explaining that "complaints need not anticipate and attempt to plead around defenses").

North Atlantic argues that we can rule on the ability of Republic to bring a Fraud Act claim at this juncture because Republic alleges in its complaint that "[b]oth Republic and North Atlantic market their cigarette paper through distributors

6

and wholesalers who, in turn, resell those products to outlets such as gas stations/mini-marts, grocers, convenience, drug and variety stores." (Compl. Par. 5). North Atlantic contends that since Republic acknowledges that neither it nor North Atlantic have a direct relationship with consumers, the fraud alleged in the instant action cannot be of sufficient importance to the welfare of consumers. North Atlantic cites *Republic Tobacco, L.P. v. North Atlantic Trading Co.*, 1999 WL 261712 (N.D. Ill. 1999) in which the court dismissed a Fraud Act claim brought by Republic because Republic alleged the same indirect relationship with consumers in that case. *Id.* at *9. The court in *Republic* concluded that the "claimed consumer connection is far too indirect to satisfy the consumer nexus requirements." *Id.* However, *Republic* is not controlling precedent and was decided in 1999, before *Williams Electronics Games, Inc. v. Garrity*, 366 F.3d 569 (7th Cir. 2004). The court in *Republic* also relied on *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430 (7th Cir. 1996), which was decided before *Williams* and is distinguishable from the instant action. 1999 WL 261712, at *9.

The court in *Athey* was evaluating the evidence and reviewing a district court's ruling on summary judgment, *id.* at 436-37, whereas in the instant action, we are at the pleadings stage and North Atlantic is attempting to resolve the consumer issue based upon inferences drawn from the allegations in the complaint. Also, the

Court in *Athey* reviewed a district court's determination that there was no evidence in the case that "implicate[d] consumer protection concerns." 89 F.3d at 436. In the instant action, however, there are such facts that touch on consumer concerns. When considering the allegations in the complaint and viewing them in a manner most favorable to Republic, there are facts that indicate that Republic and North Atlantic are significant participants in the cigarette paper market and that the information allegedly distributed by North Atlantic could have directly or indirectly impacted the cigarette paper market and the market's consumers. The Court in *Athey* also noted that the plaintiff had not attempted on appeal to show the required connection between the alleged fraud and consumers and instead argued that the requirement was contrary to the Fraud Act. *Id.* In the instant action, on the other hand, Republic does argue that the fraud alleged in this case does "implicate consumer protection concerns." (R. Ans. 5). *Athey* is thus not applicable at this juncture based on the pleadings before us.

We cannot, based on the complaint, determine the nexus that Republic has with consumers or the importance of the alleged fraud in the action to the cigarette paper market. If, as North Atlantic contends, Republic's business dealings and its fraud claims have such a tenuous connection with consumers and do not have any significant impact on consumers, then North Atlantic may point to evidence that

8

supports such conclusions at the summary judgment stage. The motion to dismiss stage, however, is not the proper moment to make such arguments in the absence of clear factual pleadings that conclusively resolve the issues. *See Baker*, 387 F.3d at 664(stating that although the "plaintiffs' allegations provide[d] little detail . . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Therefore, we deny North Atlantic's motion to dismiss the Fraud Act claim.

## II. Unfair Competition Claim (Count V)

North Atlantic argues that the court should dismiss the unfair competition claim because Republic has not pled the claim with sufficient specificity. Republic alleges in the complaint that "North Atlantic's false and misleading statements to Republic's customers constitute *common law* unfair competition." (Compl. Par. 29)(emphasis added). North Atlantic argues that since Republic fails to specify which state's common law is applicable, Republic has not given sufficient notice of the claim that it is bringing. However, North Atlantic is improperly attempting to impose the burden upon Republic of pleading legal theories. Under the notice pleading standard, a plaintiff is not required to plead legal theories. *Nance*, 147 F.3d at 590 (stating that "[p]laintiffs need not plead facts or legal theories; it is enough to

set out a claim for relief"); *Higgs*, 286 F.3d at 439 (stating that plaintiffs "don't have to plead legal theories"). Thus, Republic does not, as North Atlantic contends, have to specifically plead, for example, an Illinois common law unfair competition claim or an Indiana common law unfair competition claim. All Republic is required to do is present events or conclusions that would support an unfair competition claim under a state's common law. The potential state common law claim that is pled in a complaint can generally be gleaned from the facts included in the complaint or information that is already in the defendant's possession. The Seventh Circuit has made it clear that under the federal notice pleading standard, instead of inquiring as to whether a plaintiff has correctly labeled the causes of action in the complaint, "a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992). Thus, when reviewing a complaint, a court should not attempt to determine whether a plaintiff has pointed to the appropriate state's common law or any common law.

We need not determine in the instant action whether Republic has stated an unfair competition claim under the common law of a relevant state because North Atlantic does not argue that the events in the complaint cannot support an unfair competition claim. North Atlantic's only point is that it has not been informed

which common law is applicable, but Republic was not obligated to include such information in its complaint. We note that North Atlantic itself cites *Conley v. Gibson*, 355 U.S. 41 (1957), in its memorandum and the court in *Conley* stated that the allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46; (N. Mem. 4).

In addition, even though Republic was not required to specifically identify and label its unfair competition claim, Republic has offered an explanation for the absence of a reference to a specific state's common law. Republic asserts that it needs to conduct discovery before it can determine the precise locations of North Atlantic's alleged misconduct and which state's consumers may have been affected by the alleged fraud. Such information could impact the determination of which state's common law is applicable. Thus, Republic has offered a valid justification for not specifying which state's common law is the basis for its unfair competition claim. To the extent that there is any question concerning the location of the alleged misconduct by North Atlantic or which consumers may have been affected, the necessary information to make such determinations should already be in the possession of North Atlantic and thus there should be no surprise to North Atlantic as to which state's common law may be applicable. Therefore, we deny North

Atlantic's motion to dismiss the unfair competition claim.

## CONCLUSION

Based on the foregoing analysis, we deny North Atlantic's partial motion to dismiss Counts III and V in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 18, 2006